**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**KIMBERLY CONNORS**                                                                              **PLAINTIFF**

**V.**                                              **Case No. 2:20-CV-02217-PKH**

**MERIT ENERGY COMPANY, LLC**                                                    **DEFENDANT**

## MERIT ENERGY COMPANY, LLC'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff Kimberly Connors, who was fifty-five years' old at the relevant time, has failed to provide any evidentiary support for her allegations that Merit Energy Company, LLC's ("Merit's") decision not to give her a job offer had anything to do with her gender or age. Merit bought the assets of Ms. Connors' employer ("XTO"). Merit had its own people, so it did not need to hire all XTO's employees. Merit's Interview Team had only a few weeks to interview XTO's people at XTO's office and in the field and to decide who, if anyone, to hire. The undisputed evidence establishes that Merit's Interview Team chose not to offer Ms. Connors a job based on legitimate performance concerns, including lack of enthusiasm, admitted clashes with her XTO supervisor, the absence of strong endorsements from other XTO supervisors, and safety concerns. Ms. Connors has no evidence of discriminatory intent beyond the facts that she is female, is over the age of forty, and was not offered a job. That is not enough to survive summary judgment.

## UNDISPUTED FACTS

On January 1, 2020, Merit purchased a collection of oil and gas assets ("Assets") from XTO Energy ("XTO") that XTO administered out of its Ozark office. **See Statement of Undisputed Material Fact in Support of Motion for Summary Judgment (SUMF), ¶ 1.** Merit planned to hire some of XTO's employees from XTO's Ozark office to help Merit operate the

Assets.  **SUMF, ¶ 2.** However, Merit already had experienced oil and gas operators and would not need to hire all XTO's former employees. **SUMF, ¶ 2.** XTO provided Merit with a list of employees (the "Employee List"). **SUMF, ¶ 5.** The Employee List identified employees by personnel number, name, years of service, position, supervisor, employment status, and email. **SUMF, ¶ 5.** The Employee List contained twenty-eight XTO lease operators, including Ms. Connors (all were men except for her). **SUMF, ¶ 14, 15.** Merit, however, only needed twenty of XTO's lease operators. **SUMF, ¶ 15.**  And, XTO required Merit to hire four people as part of the sale, at least one of whom was a lease operator, but Ms. Connors was not one of them**.  Munger Depo. at pp. 76: 20-77:7 (Ex. B)**.  All of the lease operators considered for employment had relevant prior experience and had worked for XTO for years. **SUMF, ¶ 16.**  Ms. Connors agreed that XTO only hired the "elite." **SUMF, ¶ 17**.  It was therefore evident from the start that some qualified XTO lease operators would not be needed and would not receive job offers from Merit.

Merit applied the same interview process (the "Hiring Process") as it had for numerous prior asset acquisitions. **SUMF, ¶¶ 7, 8.**  Merit's experienced field supervisors Clay Munger and Randy Sanders (the "Interview Team") conducted the Hiring Process at XTO's office, and it was based almost exclusively on what they observed in the limited time they had. **SUMF, ¶¶ 10, 11; Munger Depo. at pp. 8:6-27:20 (detailing Mr. Munger's forty-years of experience in the oil and natural gas field) (Ex. B).** XTO did not provide Merit with XTO's employee records containing demographic information, employee discipline, training, or performance reviews. **SUMF, ¶ 13.**  If Merit had been provided Ms. Connors' performance reviews from XTO, it would have noticed a general declining trend in Ms. Connors' performance ratings from 2007 to 2019 with 2017-2019 being the worst:



**Connors Depo., Exhibit 2 (Ex. C)**.  However, these records were only provided to Merit by Plaintiff as a result of discovery in this lawsuit.

The Interview Team was seeking lease operators who demonstrated enthusiasm, who shared process improvement ideas during the interview process, and who took safety seriously. **SUMF, ¶ 18.**  Mr. Munger, specifically, was seeking lease operators who were self-motivated, who took care of their equipment, and who wanted to do the best job possible. **SUMF, ¶ 19.**

The Hiring Process for lease operators included having the Interview Team conduct ride-alongs with each XTO lease operator to observe them in the field. **SUMF, ¶ 9.** Mr. Munger and Mr. Sanders also observed XTO's people generally as they conducted their daily tasks. **SUMF, ¶ 11.** Mr. Munger and Mr. Sanders asked XTO's employees about their prior work experience and invited them to share ideas about maintaining or increasing production of the Assets. **SUMF, ¶ 11.** Mr. Munger and Mr. Sanders also offered an in-person interview to each prospective employee, arranged by XTO and held at XTO's office. **SUMF, ¶ 9.**  They also made a practice of mentioning different XTO employees to their supervisors to evaluate the supervisors' non-verbal response (e.g., did the supervisors act more or less enthusiastic when certain names were mentioned). **SUMF, ¶ 12.**

During the interview process, Mr. Sanders conducted a ride-along with Ms. Connors. **SUMF, ¶ 22.** Nothing about Mr. Sanders ride-along with Ms. Connors stood out to him in any way. **SUMF, ¶ 22.** Ms. Connors testified Mr. Sanders asked her if she had ideas about how to improve her wells, and she testified that, even with her 17 years of experience, the best response she gave during the interview was "I think I responded that I would have to – I would have to think." **Connors Depo. at p. 60:13-17 (Ex. C).** She never did respond further. *Id*. at p. 69: 15-22. Moreover, Mr. Sanders noted that none of the XTO supervisors spoke positively about Ms. Connors even though they praised the other lease operators. **SUMF, ¶ 24.** This made an impression on Mr. Sanders. **SUMF, ¶ 24.** Mr. Sanders did not immediately rule out Ms. Connors for these reasons, but he ultimately concluded that there were twenty other lease operators who were better candidates. **SUMF, ¶ 25.**

Mr. Munger also conducted a ride-along with Ms. Connors. **SUMF, ¶ 29.** During that process he became aware of a long-running dispute between Ms. Connors and her XTO supervisor regarding "dropping soap" on wells, a proven method of increasing production on the wells. **SUMF, ¶ 29, 33.** Specifically, Mr. Munger conducted a ride-along with Giles France, another XTO lease operator, after his ride-along with Ms. Connors was finished. **SUMF, ¶ 31.** Mr. France and Ms. Connors had the same field supervisor, Scott Smith. **SUMF, ¶ 32.** Mr. Smith had instructed Ms. Connors to soap her wells more frequently. **SUMF, ¶ 33.** Ms. Connors did not do so. **SUMF, ¶ 33.** Mr. Smith instructed Mr. Giles to soap the wells on Ms. Connors' route instead. **SUMF, ¶ 34.** During Mr. Munger's ride-along with Mr. France, Mr. France told Mr. Munger that Mr. Smith had instructed Mr. France to drop soap on some of the wells on Ms. Connors' route. **SUMF, ¶ 35.** Mr. Munger believes that Mr. Smith had instructed Mr. Giles to drop soap on Ms. Connors' wells because Ms. Connors refused to do so herself, despite Mr. Smith instructing her

to. **SUMF, ¶ 36.** Ms. Connors refusal to do as instructed by a supervisor did not leave Mr. Munger with a favorable impression of Ms. Connors. **SUMF, ¶ 36.**

Ms. Connors admitted in her deposition that she and Mr. Smith had a long-running dispute over whether wells on her route would benefit from dropping soap. **Connors. Depo. at pp. 40:15 – 41:21 (Ex. C).** With respect to this dispute, she testified "I didn't care. Scott [Smith] didn't mean anything to me . . . And I did my job, and if I didn't have to talk to him, I was better for it." *Id.* **at pp. 47:23-48:1**. She testified elsewhere that "Scott [Smith] and I didn't see eye-to-eye, and we did bump heads. Yes. . . . And if Scott could've got rid of me, he would've because he didn't like me, and I didn't like him, but we could work together, and we did." *Id.* **at p. 22:7-12**.

During the Hiring Process, Mr. Munger also observed that Ms. Connors generally had a negative attitude in her interactions with XTO employees and Merit's representatives. **SUMF, ¶ 37.** Ms. Connors did not seem to get along well with her supervisor and spoke negatively about Mr. Smith in particular. **SUMF, ¶¶ 37, 38, 39.** Ms. Connors agreed that she and Mr. Smith did not get along. **SUMF, ¶ 38.** Mr. Munger also observed that Ms. Connors routinely wore her fire-resistant clothing improperly, in violation of Merit's safety protocols. **SUMF, ¶ 41.** Mr. Munger had opportunity to observe this both in the field and coming and going from various offices. **SUMF, ¶ 40.** He also noticed that Ms. Connors was wearing her fire-resistant clothing improperly in an XTO employee photograph. **SUMF, ¶ 42.**




Kimberly Lowell Connors
OPER LEASE
Ozark

**Connors Depo., Ex. 5 (Ex. C)**. This concerned Mr. Munger because it posed a serious safety concern and suggested that Ms. Connors was prone to disregarding safety protocols. **SUMF, ¶ 41.** There is no evidence that Mr. Munger observed similar problems with any of the other lease operators with whom Ms. Connors was competing for the limited slots available.

Mr. Munger and Mr. Sanders could not hire all XTO's lease operators. They both identified several performance-based reasons for not putting Ms. Connors in the top-twenty XTO lease operators who would get job offers. **SUMF, ¶ 43.** There is no evidence that either Mr. Munger or Mr. Sanders considered Ms. Connors' age or gender during the hiring process. **SUMF, ¶¶ 28, 44.** As a matter of policy, Merit is an equal-opportunity employer and does not consider age or gender in its personnel decisions and there is no evidence that Merit's policy was not applied in this instance. **SUMF, ¶ 45.** Ms. Connors was on the only female lease operator on the Employee List. **SUMF, ¶ 46.** Merit had no control over the candidate pool that XTO had pre-established, and Merit is not responsible for Ms. Connors being the only female lease operator at XTO's Ozark office. **SUMF, ¶ 46.** As to age discrimination, of the twenty lease operators Merit hired, most of them (thirteen) were over the age of forty, and eight were over the age of fifty. **SUMF, ¶ 50.** The oldest lease operator Merit hired was sixty-six years old. **SUMF, ¶ 50.**

## ARGUMENT

Merit had legitimate performance-based reasons for not offering Ms. Connors a job. Her entire lawsuit is premised on the idea that because she is a woman over the age of forty, the fact that Merit did not offer her a job is presumptively discriminatory. That is not the law. Merit had no duty or obligation to hire Ms. Connors, let alone provide her the extended interview process that it did. Employers have broad discretion over personnel matters, and that is particularly true when the employment decision is a hiring one rather than a termination one. Employers may make

hiring decisions based on any criteria that is not otherwise prohibited by law. The undisputed evidence shows that Merit's decision not to hire Ms. Connors was based on lawful, non-discriminatory considerations.  Whether Merit's interview process reached the best outcome or even a fair or reasonable one is irrelevant. All this Court needs to consider is that there is no evidence that age and gender had anything to do with the decision not to offer Ms. Connors a job. Because Ms. Connors has failed to establish any genuine issue of material fact in support of her allegations of age and sex discrimination, summary judgment should be granted.

This Court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To avoid summary judgment, a non-moving party must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  A "plaintiff cannot merely point to unsupported self-serving allegations but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a [finder of fact] could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248.  "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256.

I.     **Merit Had No Obligation To Hire Ms. Connors And Had Legitimate Business Reasons Not To Hire Ms. Connors**

In Ms. Connors' deposition, she stated that she believes that Merit was obligated to hire her because of her experience as a lease operator. **Connors Depo. at p. 63:16-25 (Ex. C)**. The United States Supreme Court disagrees. *See Fall River Dying & Fishing Corp. v. N.L.R.B.,* 482 U.S. 27, 40, 107 S. Ct. 2225, 2234 (1987) (stating "the successor is under no obligation to hire the employees of its predecessors, subject, of course, to the restriction that it not discriminate . . . in its hiring"). Merit was under no obligation to hire any of XTOs employees after the Acquisition, and certainly was under no obligation to hire Ms. Connors specifically, regardless of her work experience.

The law allows Merit to evaluate potential employees based on Merit's own criteria, even if those criteria contained subjective components. *See Evers v. Alliant Techsystems, Inc.,* 241 F.3d 948, 958 (8th Cir. 2001) (holding that "[t]he presence of subjectivity in employment evaluations is itself not a grounds for challenging those evaluations as discriminatory") (quoting *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 780 (8th Cir. 1995); *Elliott v. Montgomery Ward & Co.,* 967 F.2d 1258, 1263 (8th Cir. 1992) (stating "that an evaluation process contains some subjective components cannot in and of itself prove pretext or discriminatory intent"); *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 858 (8th Cir. 2003) (holding that an inference of discrimination does not arise merely "because the employer chose a clearly less qualified or unqualified individual on the basis of subjective considerations alone.). Where the objective qualifications of two job candidates are comparable, an employer may use subjective criteria to determine which prospective employee has the best personality to better fit the position or integrate with a team. *Id.* It is not the role of this Court to "sit as super-personnel department to second-

guess the wisdom of a business's personnel decisions." *Evers v. Alliant Techsys., Inc.*, 241 F.3d 948, 957 (8th Cir. 2001) (internal quotation marks omitted).

Mr. Munger and Mr. Sanders were aware that Merit would not need to hire all XTO's Ozark employees. **SUMF, ¶ 4.** They therefore sought to identify the XTO employees whom they thought, based on what limited information that could glean through the Hiring Process, were likely to be the best fit for Merit. **SUMF, ¶¶ 18, 19.** They were looking for candidates with enthusiasm, innovative views, experience, who took safety seriously, and who appeared to present few or no performance issues. **SUMF, ¶¶ 18, 19.** Given Ms. Connors' ongoing feud with her immediate supervisor, her generally negative attitude, her absence of supervisor support, and concerns over how she wore her fire-resistant clothing, Ms. Connors did not have the strongest job application of all the applicants from Merit's perspective. **SUMF, ¶¶ 21-43.**

Ms. Connors has established no genuine dispute of material fact suggesting any of the performance issues that impacted Mr. Munger and Mr. Sanders' decision not to offer her a position with Merit were pre-textual. In her deposition, Ms. Connors admitted that she is pictured wearing her fire-resistant clothing in the office improperly. **SUMF, ¶ 42**. Ms. Connors also admitted to having disputes with Mr. Smith and to refusing to follow his instructions. **SUMF, ¶ 38.** Indeed, her testimony makes clear that she took pride in not doing as instructed. *Id*. Given that Merit had no obligation to hire Ms. Connors in the first place and that Merit was within its right to rely on internal hiring criteria and subjective analysis, <u>any</u> factor would have been sufficient to justify not making Ms. Connor an offer. *See N.L.R.B.,* 482 U.S. at 40, 107 S. Ct. at 2234; *Chambers*, 351 F.3d at 858. When asked about the ride-alongs, Ms. Connors testified that because Mr. Mungers' ride along with her was, she believed, not as long as the others, "he had already made up his mind he

wasn't going to hire a woman.  That is my opinion."  **Connors Depo. at p. 61:12-14 (Ex. C)**. Opinion is not enough to survive summary judgment.

There is no doubt that Merit was under no obligation to hire any of XTO's employees. *See N.L.R.B.,* 482 U.S. at 40, 107 S. Ct. at 2234. Nor is there any doubt that Merit was permitted to develop its own internal hiring criteria to evaluate prospective employees. *See Chambers*, 351 F.3d at 858. Merit has provided the deposition of Clay Munger and the affidavits of Randy Sanders, Giles France, and Melanie Lane to show that valid performance-based reasons were the only reasons for Merit's decision not to hire Ms. Connors.  It is Ms. Connors' responsibility to meet that proof with proof and show that there is an issue for trial because "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510. Ms. Connors has not met that responsibility, and Merit's motion for summary judgment should be granted.

## II.    Ms. Connors Has Provided No Proof of Sex Discrimination

Ms. Connors alleges that Merit violated Title VII and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.* ("ACRA"), when it made an adverse employment decision regarding Ms. Connors on the basis of gender.[1] When bringing a failure-to-hire gender discrimination claim, "a plaintiff may survive the defendant's motion for summary judgment in one of two ways." *Griffith v. Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004). The first is by providing direct evidence of discrimination, which is evidence "'showing a specific link between

---

[1] Merit is entitled to summary judgment on the ACRA claim for the separate reason that Plaintiff cannot satisfy the elements of such a claim.  ACRA is the state-law equivalent of Section 1983, a statutory cause of action against the government (i.e., state actors). *Harmon v. Payne*, 2020 Ark. 17, 5, 592 S.W.3d 619, 623 (2020) ("The Arkansas Civil Rights Act imposes liability when state officials acting under the color of state law deprive persons of their rights under the Arkansas Constitution.").  Plaintiff's ACRA claim is frivolous as no evidence has ever existed that Merit has been acting in any sort of capacity as officials for the State of Arkansas.

the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Id* (quoting *Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64, 66 (8th Cir. 1997)). However, if the plaintiff does not have "evidence that clearly points to the presence of an illegal motive" then the plaintiff must "create[e] the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

The *McDonnell Douglas* burden-shifting analysis requires a plaintiff to show a prima facie failure-to-hire case by showing (1) she is a member of a protected class, (2) she was qualified for the position for which the employer was accepting applications, (3) she was denied the position, and (4) the employer hired someone from outside the protected class. *Arraleh v. County of Ramsey,* 461 F.3d 967, 975 (8th Cir. 2006). Once the plaintiff makes a prima face case, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the hiring decision. *Id.* If the employer shows a legitimate business reason for the hiring decision, then the burden shifts back to the plaintiff to show that the legitimate business reason is actually pretext. *Id.*

Pretext is not shown just because an employer selected a comparably qualified or even lesser qualified candidate for a position. *See Kincaid v. City of Omaha,* 378 F.3d 799 (8th Cir. 2004). "Although [a prospective employee] does possess the experience and some of the other qualities essential for success in the position, this does not suffice to raise an inference that [the employer's] stated rationale for giving the position to another is pretextual." *Lidge-Myrtil v. Deer & Co.,* 49 F.3d 1308, 1311 (8th Cir. 1995). It is not enough for a plaintiff to show that an employer's proffered legitimate, non-discriminatory motive is unfair, mistaken, overly critical, or unpersuasive. *See Adkins v. University of the Ozarks,* 262 F. Supp 3d 791, 798. Rather, the plaintiff must show the actual existence of discriminatory animus. *Id.*  (The Eighth Circuit acknowledges

that the employer is uniquely suited to determine which applicants are strongest given all the circumstances. *See Duffy v. Wolfe,* 123 F.3d 1026, 1037-38 (8th Cir. 1997). Anti-discrimination laws have not put Courts in a position to sit in judgment of business decisions employers make, as long as those decisions are not overtly discriminatory. *See Hutson v. McDonnel Douglas Corp.,* 63 F.3d 771, 781 (8th Cir. 1995).

This Court has closely adhered to the Eighth Circuit's high bar for pretext. *See Haney v. Hain Celestial Group, Inc.,* 2020 WL 1560291, *3 (W.D. Ark. Apr. 1, 2020) (granting the employer summary judgment on the plaintiff's sex discrimination claim because the plaintiff's pretext evidence did not show that the employer's legitimate nondiscriminatory reason was not rooted in fact and that discrimination was the more likely motivation). In particular, this Court has rejected mere speculative opinion as sufficient evidence of pretext. *See Akridge v. Kroger Ltd. Parnership, I,* 2015 WL 2449471 (W.D. Ark. May 21, 2015) (granting the employer summary judgment on the plaintiff's sex discrimination claim where plaintiff offered only her own opinion that sex discrimination was the motivating factor in an employment decision). "Speculation, absent any proof, is insufficient to make [a plaintiff's] case." *Id.* at *5.

Ms. Connors has provided no direct evidence of sex discrimination. In fact, Ms. Connors acknowledges that no Merit employee or representative commented to her about her age or gender. **SUMF, ¶¶ 48, 49**. Ms. Connors also acknowledged that she did not witness any Merit employee or representative acting or speaking in a discriminatory manner. ***Id***.  She has only provided her opinion that the length of her ride-along was because Mr. Munger had decided not to hire a woman. ***Id***. Ms. Connor's testimony said nothing about the duration of her ride-along with Mr. Sanders. Ms. Connor's opinion is not direct evidence of discrimination. It is therefore undisputed that Ms.

Connors has not and cannot provide any evidence of direct discrimination. Accordingly, Ms. Connors must satisfy the *McDonnell Douglas* burden-shifting standard.

Merit has provided extensive and consistent evidence showing that Merit had a legitimate, non-discriminatory basis for its decision to not hire Ms. Connors. Thus, to survive summary judgment, Ms. Connors must provide evidence of pretext sufficient to allow a reasonable jury to find in her favor. *See Anderson,* 477 U.S. at 248, 106 S. Ct. at 2510.

Ms. Connors has not met that pretext burden. In fact, Ms. Connors has largely agreed with Merit's concerns about her performance and has offered her own opinion that she believes the length of her ride-along interview with Mr. Munger was because of her gender. **SUMF, ¶ 49**. Ms. Connors herself testified XTO only hired the "elite," so the XTO lease operators that Merit did extend offers to were elite job candidates too. **SUMF, ¶ 17.** Notwithstanding that, Ms. Connors' attitude towards her co-workers is evident from her testimony naming several people with seven, ten, and eight years of experience with XTO who were, in her opinion, less qualified than she was. ***Id*. at p. 61:18-25, p. 64:1-18 (Ex. C)**. Ms. Connors could not have known that her old route and the wells she was familiar with have changed and been reorganized as Merit acquired additional properties. **Munger Depo. at p. 79:16-24 (Ex. B)**. Consequently, her familiarity with those wells would be of less value to Merit than her ability to work effectively with others such as the people she testified were less qualified than she was. This Court has held that opinion evidence will not allow a plaintiff to survive summary judgment. *Akridge,* 2015 WL 2449471, at *5. The Eighth Circuit has made it clear that Ms. Connors' proffered evidence is insufficient to allow a reasonable jury to find that Merit's explanation for not hiring Ms. Connors is pretext. *See Kincaid v. City of Omaha,* 378 F.3d 799 (8th Cir. 2004) (holding that pretext is not shown just because an employer selected a comparably qualified or even lesser qualified candidate for a position).

Ms. Connors has failed to show direct evidence and has failed to meet the *McDonnell Douglas* pretext requirement regarding sex discrimination. This Court should grant Merit's motion for summary judgment as to Ms. Connor's Title VII and ACRA sex discrimination claims.

### III.   Ms. Connors Has Provided No Proof Of Age Discrimination

Ms. Connors also alleges that Merit decided not to hire her because of her age, in violation of the Age Discrimination in Employment Act (the "ADEA"). The sex discrimination evaluation outlined above applies to the evaluation of an age discrimination claim. The plaintiff must show either direct evidence of age discrimination or meet the *McDonnell Douglas* burden-shifting standard. *Starkey v. Amber Enterprises, Inc.,* 987 F.3d 758, 763 (8th Cir. 2021). However, the plaintiff has the added burden of showing that "by a preponderance of the evidence . . . age was the but-for cause of the employment decision." *Id.* A but-for cause is one, without which, the employment decision would have been different. *See id.*

In order to establish a prima face age discrimination case, a plaintiff must show that (1) she was at least forty years old, (2) she suffered an adverse employment action, (3) she was meeting her employer's legitimate expectations at the time of the adverse employment action, and (4) she was replaced by someone substantially younger. *Id.* If a plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. *Id* at 764. Assuming the employer does so, the burden then shifts back to the plaintiff to show pretext.

Pretext must be more than a mere denial of the employer's proffered legitimate, non-discriminatory reason for its employment decision. *See Lee v. Rheem Mfg. Co.,* 423 F.Supp. 2d 921, 926 (W.D. Ark. 2005) (granting the employer summary judgment on the plaintiff's ADEA claim where the employer stated that it had not hired the plaintiff because it was looking for long-

term employees interested in advancement and the plaintiff's only pretext argument was that no management succession plan was in place). To show pretext, a plaintiff must provide a showing of intentional age discrimination rather than mere dissatisfaction with the employer's processes or results. *See McGill v. Reynolds Metal Co.,* 169 F. Supp. 2d 966 (W.D. Ark. 2001) (granting the employer summary judgment on the plaintiff's ADEA because a plaintiff cannot show pretext where members of the same protected class as the plaintiff were given the employment opportunities or benefits the plaintiff had not received). Pretext is not established where the only evidence offered is that a younger person was hired over the plaintiff. *See Davis v. Holiday Inn City Center,* 2013 WL 3270581, *2 (W.D. Ark. June 27, 2013).

Here, Ms. Connors fails even to establish a prima facie case. Although Ms. Connors is over forty years old, she meets none of the other elements of a prima facie case. Ms. Connors was not an employee of Merit, and therefore Merit cannot take an adverse employment action against Ms. Connors. In fact, Ms. Connors was not even fired or let go from XTO because of the Ozark Acquisition. **SUMF, ¶ 47**. XTO offered Ms. Connors a job elsewhere in the company that Ms. Connors initially accepted but then rescinded for personal reasons. *Id*. Nor was Ms. Connors meeting her employer's legitimate expectations at the time of the adverse employment action. Ms. Connors admits that she was not meeting Mr. Smith's expectations at the time that Merit chose not to hire her because she was not soaping her wells according to his instructions. **Connors. Depo. at pp. 40:15 – 41:21, 47:23-48:1, 22:7-12 (Ex. C); SUMF, ¶ 38**. Ms. Merit not only observed that Ms. Connors was not meeting her current employer's expectations, but also assessed that she was not the strongest candidate they were interviewing. **SUMF, ¶¶ 21-43.** Finally, Ms. Connors was not replaced by someone substantially younger, given that thirteen of the twenty lease operators Merit hired were over the age of forty and eight were over the age of fifty. Indeed, she

was never entitled to a job with Merit and therefore cannot be deemed to have been "replaced" by any of the "elite" candidates that Merit did hire.

However, assuming for the sake of argument that a prima facie case exists, the *McDonnell Douglas* burden-shifting standard is still not met. Merit has provided ample evidence of legitimate, non-discriminatory motivation for its decision to not hire Ms. Connors, as outlined above. Ms. Connors, however, has failed to establish pretext. Ms. Connors argues only that it does not make sense to her for Merit to hire lease operators who are younger and have less experience than her. **Connors Depo. at p. 61:18-25, p. 64:1-18 (Ex. C)**. Ms. Connors has no evidence that her work experience is meaningfully better than that of lease operators with seven, eight, or ten years of experience. And, Ms. Connors disregards that Merit hired lease operators of similar age or even older than her, thus defeating any inference that age was a consideration in not extending her a job offer. Ms. Connors must do more than merely discredit Merit's legitimate reason for its adverse employment decision. *See Gibson v. American Greeting Corp.,* 670 F.3d 844, 856 (8th Cir. 2012). She must provide some evidence that "permit[s] a reasonable inference of discriminatory animus." *Id.* Ms. Connors has provided no evidence of age discrimination at all.

Again, Ms. Connors has failed to show direct evidence and has failed to meet the *McDonnell Douglas* pretext requirement regarding age discrimination. This Court should grant Merit's motion for summary judgment as to Ms. Connor's ADEA claim.

## CONCLUSION

Merit was not required to hire and did not have any reason to hire all of XTO's lease operators in XTO's Ozark office. Ms. Connors apparently failed to recognize that and conducted herself during Merit's interview process as if it was business as usual and she was entitled to a job from Merit. It is therefore no surprise that she failed to impress Merit's Interview Team, which

could not hire all of XTO's lease operators anyway. The fact that Ms. Connors did not make the cut is therefore predictable; it is not evidence of gender or age discrimination that would allow her claims to survive summary judgment.  For the foregoing reasons, Merit Energy Company, LLC prays this Court grant its motion for summary judgment.

Respectfully Submitted,

Michael B. Heister (Bar I.D. No. 2002091)
**QUATTLEBAUM, GROOMS & TULL PLLC**
111 Center Street, Suite 1900
Little Rock, AR 72201
(501) 379-1700
mheister@qgtlaw.com
lohara@qgtlaw.com
Laura L. O'Hara (Bar I.D. No. 2021150)

*Counsel for Merit Energy Company, LLC*