**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**KIMBERLY CONNORS**                                                           **PLAINTIFF**

v.                        Case No. 2:20-CV-02217-PKH

**MERIT ENERGY COMPANY, LLC**                                              **DEFENDANT**

**MERIT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Merit Energy Company, LLC ("Merit"), submits the following Reply in support of its Motion for Summary Judgment (**Doc. 28**), in response to Kimberly Connors' Response in Opposition to Motion for Summary Judgment (**Doc. 35**) ("Response"). This Court should grant Merit's motion because the undisputed evidence establishes that Merit had lawful, subjective reasons for deciding not to hire Ms. Connors and she has no evidence to the contrary, just her differences in opinion. That is not enough to survive summary judgment.

**A. Ms. Connors Does Not Dispute She Has No Evidence Supporting Her ACRA Claim.**

The Response offers no evidence supporting Ms. Connors' Arkansas Civil Rights Act ("ACRA") claim. The Response does not even address the ACRA claim. As Merit stated in its motion for summary judgment. **Doc. 28, Motion for Summary Judgment, at ¶ 2**. Ms. Connors cannot satisfy the elements of an ACRA claim because an ACRA claim is the state-law equivalent of Section 1983, a statutory cause of action against the government (i.e. state actors). *Harmon v. Payne,* 2020 Ark. 17, 5, 592 S.W.3d 619, 623 (2020). The Response provided no evidence suggesting that any Merit employee or representative was acting as a state actor at any point. Thus, it is undisputed that Merit is entitled to summary judgment on Ms. Connors' ACRA claim.

### B. Ms. Connors Has Provided No Evidence Supporting Her Claim That Merit Discriminated Based On Age or Gender

Ms. Connors makes three arguments while opposing summary judgment in support of her Title VII gender discrimination claim and her ADEA age discrimination claim. She argues that (1) Clay Munger was not qualified to make hiring decisions, (2) Merit hired candidates who were, in her estimation, less qualified than she was, and (3) Merit has not been consistent in its justification for not hiring Ms. Connors. Merit disagrees, but even taking Ms. Connors' arguments as true, they do not establish gender or age discrimination. Ms. Connors is required to meet Merit's proof of its legitimate basis for its subjective employment decision with proof that Merit's lawful basis is mere pretext for discrimination. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). That proof must be more than mere speculation, and it must show that discrimination is a more likely motivation than the one Merit offered. *See Honey v. Hain Celestial Group, Inc.,* 2020 WL 1560291, *3 (W.D. Ark. Apr. 1, 2020); *Akridge v. Kroger Ltd. Partnership, I,* 2015 WL 2449471 (W.D. Ark. May 21, 2015). Mere dissatisfaction with Merit's hiring processes and their results in this instance are insufficient to show gender and age discrimination. *See McGill,* 169 F. Supp. 2d at 966. Mere dissatisfaction is all Ms. Connors has offered.

### 1. Clay Munger's Qualifications Do Not Demonstrate Gender or Age Discrimination

Ms. Connors suggests that Mr. Munger lacked the requisite training to make hiring decisions because he did not review company policies directly before interviewing the XTO candidates and because he only received non-discrimination training once a year. Ms. Connors' ignores the nearly sixty pages of testimony that Mr. Munger gave during his deposition, detailing his broad familiarity with the oil and natural gas industry based on holding an array of field positions, his own personal experience in those field positions, and his extensive hiring and

supervising experience at various Merit locations over decades. **Doc. 28-2, Munger Depo, at 8:11-67:19.** And, as Ms. Connors herself points out, Mr. Munger testified that he did attend yearly company policy trainings, including training on non-discrimination in the workplace. **Doc. 28-2, Munger Depo, at 27:21-28:17, 73:12-23**. Ms. Connors offers no expert testimony to cast any doubt on Mr. Munger's credentials. Mr. Munger had the requisite qualifications to make hiring decisions, and there is no evidence that his decisions were driven by age or gender considerations.

Ms. Connors does not even try to address the fact that Mr. Munger did not act alone on Merit's behalf. Randy Sanders was also present, conducted his own ride-alongs with employees including Ms. Connors, and had his own conversations with XTO's supervisors about their employees. **Doc. 28-4, Sanders Affidavit, at ¶¶ 5, 8, 9, 11, 12, 13**. Mr. Sanders has 47 years' experience in the industry. *Id*. **at ¶ 3**.

However, even if Ms. Connors had the expertise to provide legitimate criticism about Mr. Munger's training and qualifications, that would not establish gender or age discrimination for purposes that survive summary judgment. Even where an employer's decision is unfair, mistaken, overly critical, or unpersuasive, there is no pretext without a showing of actual discriminatory animus. *Lidge-Myrtil v. Deer & Co.,* 49 F.3d 1308, 1311 (8th Cir. 1995). All that Ms. Connors has asserted is that Mr. Munger's training and hiring qualifications do not meet her standards. She takes no issues with Mr. Sanders' qualifications. But all of this is irrelevant to this Court's analysis and does not meet Ms. Connors' pretext burden.

### 2. Merit Hired The Candidates It Considered Most Qualified

Employment decisions are inherently subjective. Courts do not "sit as super-personnel department[s] to second-guess the wisdom of a business's personnel decisions." *Evers v. Alliant Techsys., Inc.,* 241 F.3d 948, 957 (8th Cir. 2001). The fact that an employer's candidate evaluation

3

process is subjective cannot prove pretext. *Elliott v. Montgomery Ward & Co.,* 967 F.2d 1258, 1263 (8th Cir. 1995). Even if an employer chooses "a clearly less qualified or unqualified individual on the basis of subjective considerations alone" no discrimination inference arises. *Chambers v. Metro. Prop & Cas. Ins. Co.,* 351 F.3d 848, 858 (8th Cir. 2003).

Ms. Connors believes that Merit hired applicants less qualified than she was. However, Ms. Connors fails to consider that her view and Merit's view of what qualifies an applicant could reasonably differ and that Merit's right to rely on its own subjective criteria is protected. *See Elliott,* 967 F.2d at 1263; *Chambers,* 351 F.3d at 858. Ms. Connors made clear in her deposition that she believed Merit owed her a job offer because she was the most qualified candidate in her opinion. **Doc. 28-3, Connors Depo, at 63:16-25**. Ms. Connors' opinion regarding what would make a candidate the most qualified does not dictate what Merit was looking for in the candidates. Ms. Connors provided no evidence that she has ever hired or fired anyone let alone supervised others. Notably, Ms. Connors' belief that her opinion is more likely to be correct than the opinions of those with decision-making authority is also what appears to have created the conflicts with her supervisors that discouraged Merit from including her in the final offer pool.

In her Response, Ms. Connors devotes significant attention to Merit's spreadsheet notations regarding the various candidates. Ms. Connors primarily relies on Merit's interview notes to demonstrate that younger, less experienced people were hired instead of her. There is no doubt that some of the XTO lease operators Merit hired had worked for XTO fewer years and had shorter routes than Ms. Connors. However, there is no evidence in this case that either has any correlation with skill or than a lease operator with seven years of experience is inherently less qualified than one with 17 years of experience. It is just likely that XTO assigned its best lease operators to the shortest routes to minimize downtime traveling and gave them the fewest wells

because they required the most attention but were more productive. And, the fact that an employee held the same position for many years means they never got promoted so time in one position is not necessarily evidence that person is the best at that position, as Ms. Connors seems to assume. Regardless, experience and route length were far from the only criteria Merit considered. **Doc. 35-2, MEC 204 (Declining to make an offer to Mark Andrews, a younger male candidate, in part because he appeared needy and to constantly require reassurance)**. During much of the interview process, Mr. Munger and Mr. Sanders agree they had not disqualified Ms. Connors from consideration for a job offer. **Doc. 30, Statement of Undisputed Material Facts, at ¶ 25**. Accordingly, Merit made no negative notations about her in the spreadsheet. **Doc. 28-4, Sanders Affidavit, at ¶ 13**. Indeed, if Mr. Munger or Mr. Sanders had been opposed to hiring Ms. Connors for gender or age reasons, logic suggests the notes would be more negative than they were because they would be distorted by this supposed animus.  That is not the case.

The reality is that with only twenty positions available, Mr. Munger and Mr. Sanders had to make decisions. *See* **Doc. 30, SUMF, at ¶ 15.**  Merit had performance reservations regarding Ms. Connors. Mr. Sanders spent an hour with her alone during her ride along and she left no impression on him. **Doc. 28-4, at ¶ 11**.  Mr. Sanders did recall from other interactions that none of her supervisors were willing to compliment her as they did others they supervised.  *Id***. at ¶ 12**. Mr. Munger was concerned about Ms. Connors' use of her fire-resistant clothing. **Doc. 30, SUMF, at ¶ 41; Doc 28-2, Munger Depo, at 82:17-83:2**. Although Ms. Connors disputes that she was wearing her fire-resistant clothing improperly, whether she was or was not wearing her equipment improperly is immaterial. Mr. Munger, with his decades of experience, believed her to be wearing her fire-resistant clothing improperly, and that suggested a relaxed attitude towards safety that was a concern for him. **Doc. 28-2, Munger Depo, at 82:17-83:2**. Ms. Connors tries to point to

other pictures in XTO's handbook as evidence that she was not the only one in her picture wearing her fire-retardant clothes improperly, but that was never the point. Merit cited that picture only to illustrate what Mr. Munger testified he saw in the office. **Doc. 30, SUMF, at ¶ 41**. This Court need not accept or reject Ms. Connors' implausible argument that Mr. Munger, with his decades of field experience could not tell whether she was wearing a fire-resistant shirt or a conventional one, because from a legal perspective it is irrelevant. The Eighth Circuit is clear that even if an employer makes a decision based on mistaken or overly critical beliefs, that does not equate to discrimination or pretext. *See Adkins v. University of the Ozarks,* 262 F. Supp. 3d 791, 798 (2017).

Critically, Ms. Connors does not even attempt to dispute that she was a difficult employee. **Doc. 28-5, France Affidavit, at ¶ 9; Doc 28-4, Sanders Affidavit, at ¶ 12; Doc 28-2, Munger Depo, at 83:15-84:16**. In fact, Ms. Connors appeared to pride herself on her refusal to follow her supervisor Mr. Smith's instructions. **Doc. 30, SUMF, at ¶ 39; Doc. 28-3, Connors Depo, at 40:9-42:1**. Ms. Connors has not disputed that she did not get along with Mr. Smith, that she routinely ignored his instructions to soap her wells more frequently, or that Mr. Smith would likely not have given Merit's team positive feedback about Ms. Connors. **Doc. 30, SUMF, at ¶ 38, 39; Doc. 28-3, Connors Depo, at 22:7-25, 40:15-41:21, 70:23-71:6**. In her Response, Ms. Connors does not address her difficult working relationships at all. By contrast, Merit has offered substantial evidence that it was looking for positive, proactive, enthusiastic members of a team, and that it evaluated applicants accordingly. **Doc. 30, SUMF, at ¶ 18; Doc. 28-4, Sanders Affidavit, at ¶ 12; Doc 28-2, Munger Depo, at 54:23-55:9, 81:24-82:3; Doc. 28-1, Lane Affidavit, at ¶ 14**).

Ultimately, Merit had to choose twenty lease operators based on subjective criteria and the limited information they had gathered in the limited time allowed and with limited access allowed by XTO. When it came down to the last stages, Ms. Connors had adversely distinguished herself

6

in ways that explained her not falling into the top twenty lease operators. Ms. Connors' belief that she was more qualified than any of the XTO lease operators Merit hired and that she was owed a job offer does not give rise to an inference of pretext. *See Chambers,* 351 F.3d at 858. The Eighth Circuit has held that even if an employer hires an objectively less qualified candidate based on subjective criteria, that does not prove discrimination. *Id*.

### 3. Merit Has Been Consistent In Its Justification For Not Hiring Ms. Connors

Finally, Ms. Connors alleges that Merit has deviated from its standard processes or offered different justifications for not hiring Ms. Connors than it originally offered. Neither allegation is accurate or supported by evidence. Ms. Connors refers to an "interview rubric" Merit provided. **Doc. 35-2, at MEC 043**. She has no evidence that document is, in fact, a rubric. It clearly is not a rubric but a list of possible interview questions the Merit hiring team could ask. **Doc. 35-2, at MEC 043**. Ms. Connors' characterization of this document as a rubric is not evidence, and her subsequent conclusion that Merit has somehow deviated from it is demonstrably false, confusing, and disingenuous. Merit has provided evidence that it used the same applicant evaluation process with XTO employees that it has long used during acquisitions. **Doc. 30, SUMF, at ¶8; Doc. 28-1, Lane Affidavit, at ¶ 10**. No evidence disputes that.

Ms. Connors also alleges pretext because Merit did not produce written justification for its decision not to hire Ms. Connors until written justification was requested. This argument is confusing because no legal requirement existed to do so. Putting that aside, Ms. Connors' cites to Merit's Vice President of Human Resources, Melanie Lane's email to Mr. Munger informing Mr. Munger that Ms. Connors had filed an EEOC claim. **Doc. 35-2 at MEC 140**. Ms. Lane asked Mr. Munger to provide the reason Merit had not hired Ms. Connors, any notes that he had from Ms. Connors' interview, and an explanation of the criteria used to evaluate candidates. **Doc. 35-2 at**

**MEC 140**. Nothing in Ms. Lane's email suggests that she is asking for anything other than an explanation of how Mr. Munger viewed the situation at the time.

Mr. Munger responded to Ms. Lane's email, though Ms. Connors conveniently avoided highlighting Mr. Munger's thorough and consistent response. **Munger E-Mail (Ex. A)**. Mr. Munger's response to Ms. Lane at the very earliest stage of Ms. Connors' complaint is consistent with Merit's position throughout the entirety of the litigation. Mr. Munger begins his response by stating that Merit "did not extend a job offer to Kimberly Connors for various reasons." **Munger E-Mail (Ex. A)**. He then goes on to explain the inherently subjective nature of the applicant evaluation process, noting that he and Randy Sanders and other Merit representatives personally observed the candidates in the field and during meetings. **Munger E-Mail (Ex. A).**

Mr. Munger offered a number of specific issues Merit found with Ms. Connors. He noted that he had observed Ms. Connors routinely wearing her fire-resistant clothing improperly. **Munger E-Mail (Ex. A)**. Merit has been consistent in its position on this throughout the litigation process. **Doc. 30, SUMF, at ¶ 41; Doc. 28-2, Munger Depo, at 82:17-83:2**. Mr. Munger went on to state that on his ride along with Ms. Connors, he felt she had great knowledge of the wells but failed to apply that knowledge effectively. (Exhibit 1, Munger E-Mail). He believed that she did very little work to increase the production of her wells. (Exhibit 1, Munger E-Mail). Merit has been consistent in its position on this throughout the litigation process as well. **Doc. 30, SUMF, at ¶ 25-36; Doc. 28-2, Munger Depo, at 78:11-79:7, 83:15-84:16, 104:21-104:1**. Mr. Munger also stated that he had been told by Giles France and Mr. Smith, Ms. Connors' then-current supervisor, that Mr. France had to soap Ms. Connors' wells because Ms. Connors refused to do so. **Munger E-Mail (Ex. A)**. Merit has been consistent on its position on this throughout litigation. **Doc. 30, SUMF, at ¶ 29-36; Doc. 28-2, Munger Depo, at 97:6-11**. Even Ms. Connors' deposition

further highlighted that there was a conflict between Ms. Connors and her supervisor regarding the frequency with which she soaped her wells. **Doc. 30, SUMF, at ¶ 39; Doc. 28-3, Connors Depo, at 22:7-25, 40:15-42:1, 47:23-48:1, 70:23-71:6**. Mr. Munger also stated that he spoke with David Reemes, Ms. Connors' former XTO supervisor, who agreed that Ms. Connors was not causing her wells to produce as much as they could. **Munger E-Mail (Ex. A)**.

Mr. Munger concluded that based on all the information gathered, Ms. Connors was simply not one of the first twenty XTO lease operators to receive job offers. **Munger E-Mail (Ex. A)**; *See* **Doc. 30, SUMF, at ¶ 43**). Mr. Sanders was involved throughout as well and he reached similar conclusions. **Doc. 28-4, Sanders Affidavit, at ¶¶ 5, 8, 9, 11, 12, 13**. The evidence produced during discovery has borne out Mr. Munger's original explanations. Moreover, Mr. Munger stated in his response to Ms. Lane that there were various reasons that Ms. Connors was not hired and that he and the rest of Merit's hiring team based their decision on all of the information collected. **Munger E-Mail (Ex. A)**. Thus, Mr. Munger clearly did not intend the reasons offered in his initial response to Ms. Lane to be an exhaustive list of all subjective criteria considered.

Ms. Connors complains that Merit did not reference a lack of enthusiasm as an issue early on in the evaluation process. However, Merit is not required to list out every possible subjective criteria in a list of interview questions or evaluate each subjective criteria in its interview notes. Looking back, Mr. Munger and Mr. Sanders have characterized Ms. Connors' underproduction and negative or combative attitude more generically as a lack of enthusiasm, innovation, or positive attitude. Using a variety of diplomatic phrases to reference the fact that, overall, a candidate's personality, attitude, and demeanor are not ideally suited to the position does not give rise to pretext. *See Chambers,* 351 F.3d at 858 (noting that subjective considerations in

9

employment evaluations do not give rise to an inference of pretext and that employers can evaluate the best personality for the position or team).

Despite providing no evidence of discrimination, Ms. Connors asks this Court to find that disputed issues of material fact remain because (1) Ms. Connors did not get the outcome she wanted from Merit; (2) Ms. Connors does not approve of Merit's hiring criteria or process; and (3) Ms. Connors felt she was the most qualified candidate. Even if this Court takes Ms. Connors' speculative opinion as evidence that Merit's hiring process was not exemplary and that Ms. Connors was more qualified than most or all of the candidates hired, Ms. Connors still would not have stated a discrimination claim that survives summary judgment. Ms. Connors has provided no evidence at any point throughout the discovery process or in her Response that Merit considered her age or her gender when determining whether to hire her. On the other side of the scale, Merit has provided ample undisputed evidence that Ms. Connors had difficult working relationships with her supervisors, was seen as underproductive, and displayed signs of having a relaxed view on safety. Merit had no duty to hire Ms. Connors and it had valid non-discriminatory reasons not to. Merit did not discriminate against Ms. Connors on the basis of age or gender, and Ms. Connors has not provided this Court with evidence sufficient to take this lawsuit to a jury. Accordingly, this Court should grant Merit's motion for summary judgment.

                                            Michael B. Heister (Bar I.D. No. 2002091)
                                            Laura L. O'Hara (Bar I.D. No. 2021150)
                                            **QUATTLEBAUM, GROOMS & TULL PLLC**
                                            111 Center Street, Suite 1900
                                            Little Rock, AR 72201
                                            (501) 379-1700
                                            mheister@qgtlaw.com
                                            lohara@qgtlaw.com

                                            *Counsel for Merit Energy Company, LLC*