UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KIMBERLY L. CONNORS                                                    PLAINTIFF

v.                            No. 2:20-CV-02217

MERIT ENERGY COMPANY, LLC                                             DEFENDANT

## OPINION AND ORDER

Before the Court is Defendant Merit Energy Company, LLC's ("Merit") motion (Doc. 28) for summary judgment, brief (Doc. 29) in support, and statement of facts (Doc. 30). Plaintiff Kimberly Connors filed a response (Doc. 35) in opposition and a statement of facts (Doc. 36). Defendant filed a reply (Doc. 37) and response to Plaintiff's statement of facts (Doc. 38). For the reasons set forth below, the motion will be GRANTED.

## I.    Background

This action arises out of Merit's decision to not hire Plaintiff for a position as a lease operator in Ozark, Arkansas. At the time of the events which gave rise to this case, Plaintiff was 55 years old. Plaintiff was originally employed by XTO Energy ("XTO") as a lease operator. XTO owned and operated various oil and gas assets around Ozark, Arkansas and employed 28 lease operators in this area. Of these 28 lease operators, Plaintiff was the only female. At some point prior to January 2020, XTO sold certain oil and gas assets in the Ozark area. On January 1, 2020, Merit began operating the Ozark oil and gas assets and determined it would need to hire 20 of XTO's former lease operators to continue working in the area.

Throughout its hiring process, Merit interviewed the former lease operators, did ride-alongs to observe the potential employees performing their daily responsibilities, and gauged supervisors' opinions of the lease operators.

Plaintiff had been employed by XTO as a lease operator for 17 years and had one of the longest routes of the XTO lease operators. However, Plaintiff had a less than harmonious relationship with her supervisor, Scott Smith. In her deposition, Plaintiff stated that "Scott and I didn't see eye-to-eye, and we did bump heads. . . . And if Scott could've got rid of me, he would've because he didn't like me, and I didn't like him, but we could work together and we did." (Doc. 28-3, p. 7). Plaintiff's tension with Smith stemmed in part from disagreements about the best way to maintain production of Plaintiff's wells. According to Plaintiff, "Scott was the type of person 'You're going to do it my way' . . . and you know, I'm like, 'It's not going to work that way, and let me show you why." *Id.* For example, Smith instructed Plaintiff that she needed to "soap"[1] her wells more frequently to increase their production, but Plaintiff refused because she disagreed that this method would actually increase production. Smith then instructed another lease operator to soap Plaintiff's wells for her because she would not do so herself.

During the interview process, Plaintiff's refusal to soap her wells was reported to Merit. Clay Munger, a field supervisor for Merit and one of the Merit employees responsible for making hiring decisions, claimed to have seen Plaintiff wear her fire-resistant clothing incorrectly (though Plaintiff disputes this) and claimed that when asked how she could improve her well locations, Plaintiff did not have any suggestions. Merit did not extend an offer of employment to Plaintiff.

Plaintiff, after exhausting her administrative remedies, filed this lawsuit alleging that Merit engaged in gender discrimination in violation of Title VII and the Arkansas Civil Rights Act ("ACRA") and age discrimination in violation of the Age Discrimination in Employment Act when it chose not to hire Plaintiff. Merit filed the instant motion and contends summary judgment is

---

[1] "Soaping" wells describes the process of dropping a soap stick into a natural gas well to foam the water in the well and increase gas production.

proper because it had a legitimate, nondiscriminatory reason to not hire Plaintiff and was under no obligation to extend her an offer of employment.

## II.    Legal Standard

On a motion for summary judgment the burden is on the moving party to show that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant has met his burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To establish a genuine issue of material fact, the nonmoving party may not rely on "conclusory statements in his affidavit" but must "point to evidence in the record sufficient to raise a genuine issue for trial." *Jeseritz v. Potter*, 282 F.3d 542, 545-46 (8th Cir. 2002) (quoting *Mathews v. Trilogy Comm'ns, Inc.*, 143 F.3d 1160, 1164 (8th Cir.1998)); *see also Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.")

## III.   Analysis

### A.    Gender Discrimination

On this motion there is no direct evidence of discrimination, and the *McDonnell Douglas* framework applies. *Shaffer v. Potter*, 499 F.3d 900, 904 (8th Cir. 2007) (quoting *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 965 (8th Cir. 2006)) ("Direct evidence includes 'evidence of conduct or statements by persons involved in the decisionmaking

process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor.'"). Under the *McDonnell Douglas* burden-shifting framework, the plaintiff has the burden of establishing a prima facie case of discrimination. *Shaffer*, 499 F.3d at 904-05. "In a hiring context, an applicant must show: (1) she is in a protected class; (2) she was qualified for an open position; (3) she was denied that position; and (4) the employer filled the position with a person not in the same protected class." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (quoting *Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 867-68 (8th Cir. 2009)) (alterations adopted). If a prima facie case is established, the burden shifts to Merit to "articulate a legitimate, nondiscriminatory reason for not hiring" Plaintiff. *Id.* "[T]he ultimate burden [then] falls on [Plaintiff] to produce evidence sufficient to create a genuine issue of material fact regarding whether [Merit's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id.* (quoting *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005)). A plaintiff may establish pretext by persuading the court "that the employer's explanation is 'unworthy of credence . . . because it has no basis in fact'" or "'that a prohibited reason more likely motivated the employer.'" *Nelson v. USAble Mut. Ins. Co.*, 918 F.3d 990, 993 (8th Cir. 2019) (quoting *Torgenson*, 643 F.3d at 1047).

Here, even if Plaintiff can establish a prima facie case of discrimination, Merit has proffered legitimate non-discriminatory reasons for its decision to not hire Plaintiff. Merit claims it did not hire Plaintiff because of safety concerns regarding her alleged failure to wear her fire-resistant clothing properly, her lack of enthusiasm, the clashes with her XTO supervisor, and the lack of strong endorsements from other XTO supervisors. Plaintiff admits that she and her supervisor, Scott Smith, "didn't see eye-to-eye" and that if Smith "could've got rid of me, he

would've." (Doc. 28-3, p. 7). She also admits that Smith had another lease operator dropping soap sticks on her route because she refused to follow instructions. Merit has articulated a legitimate, nondiscriminatory reason for not hiring Plaintiff.

Plaintiff, however, claims Merit's reasons were pretext. Specifically, Plaintiff claims that because she had more experience than 12 of the 20 successful candidates, the other candidates were less qualified, and therefore any decision to hire the other candidates must be motivated by discriminatory animus. Plaintiff also argues that Merit Employee Clay Munger was inadequately trained on Merit's hiring practices and that because he spent less time doing a ride-along with Plaintiff than he did with other employees, it is Plaintiff's opinion that "he had already made up his mind he wasn't going to hire a woman." (Doc. 28-3, p. 16). Finally, Plaintiff argues Merit has offered shifting justifications for its reason not to hire Plaintiff, thus further establishing evidence of pretext.

To begin, "it is not the role of this court to sit as a 'super-personnel department' to second guess the wisdom of a business's personnel decisions." *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 957 (8th Cir. 2001) (citing *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1120 (8th Cir. 1997)). As to Plaintiff's argument that she was more qualified than XTO employees that were hired, of the successful candidates, even the employee with the least amount of experience had still been employed as a lease operator for 7 years. On these facts it cannot be said that any successful candidate was unqualified for the position he was hired for. Additionally, seniority alone is not the sole determiner of what makes an employee more or less qualified, and an employer may consider subjective components in making hiring decisions. *Evers*, 241 F.3d at 959. The fact that Merit hired other former XTO employees with several years of experience instead of Plaintiff does not establish pretext.

As to Plaintiff's argument that Munger was unqualified to make hiring decisions for Merit, this argument is contravened by Munger's testimony that he attended yearly non-discrimination training and had decades of hiring and supervising experience at various Merit locations. Additionally, absent from the record is any persuasive evidence that Plaintiff's gender was in any way considered throughout her interview process. *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995) (when plaintiff could not point to any instances when management displayed any racial animus towards her, plaintiff could not rebut the defendant's proffered legitimate reason for not promoting plaintiff); *Akridge v. Kroger Ltd. P'ship I*, No. 14-6030, 2015 WL 2449471, at *5 (W.D. Ark. May 21, 2015) ("Plaintiff has come forward with nothing, other than her own opinion, to indicate that age or sex played a role in the decision to demote her to co-manager."). "Speculation, absent any proof, is insufficient to make [Plaintiff's] case." *Id.*

Finally, the evidence demonstrates that Merit has not offered shifting justifications for its decision not to hire Plaintiff.  Merit's first statement as to why it chose not to hire Plaintiff was made in preparation for its response to the Equal Employment Opportunity Commission.  Munger informed Merit's Vice President of Human Resources, Melanie Lane, that he chose not to hire Plaintiff because she was observed wearing her fire-resistant clothing improperly, she did little to try to increase or maintain production on her wells, and Munger had been informed by another XTO employee and Scott Smith that Plaintiff refused to drop soap on her wells.  (*See* Doc. 37-1). These justifications are the same reasons Merit has presented to the Court as to why it chose not to hire Plaintiff.  Therefore, Merit has not offered shifting explanations such as to suggest that these proffered reasons are merely pretext .  *See Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1135 (8th Cir. 2020) (holding that plaintiff's shifting explanation evidence did not establish pretext when the defendant never wavered from its central concern when explaining why it took adverse

6

employment action, "even if it sometimes used different words to describe [that concern]").

On these facts, no reasonable jury could find that Merit's explanation for its decision not to hire Plaintiff has no basis in fact nor could a jury find that Merit's decision not to hire Plaintiff was more likely motivated by gender discrimination. Therefore, because Merit has established a legitimate and non-pretextual reason for its decision not to hire Plaintiff, Plaintiff's claims for gender discrimination must be dismissed.

### B.      Age Discrimination

Because Plaintiff failed to establish direct evidence of age discrimination regarding her failure-to-hire claim, the *McDonnell Douglas* burden shifting framework once again applies. In a failure-to-hire case, to establish a prima facie case of age discrimination the Plaintiff must establish: "(1) the plaintiff was in the protected age group (over 40), (2) the plaintiff was otherwise qualified for the position, (3) the plaintiff was not hired, and (4) the employer hired a younger person to fill the position." *Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1095 (8th Cir. 2007) (quoting *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 856 (8th Cir. 2003)).

As discussed in relation to Plaintiff's claims for gender discrimination, Merit has proffered legitimate non-discriminatory reasons for its decision not to hire Plaintiff. The burden therefore shifts back to Plaintiff "to show that the proffered 'reason was mere pretext for discrimination' and that 'age was the "but-for" cause of the challenged adverse employment action.'" *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 764 (8th Cir. 2021) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012)).

Here, no reasonable jury could find that Plaintiff has established that Merit's reasons to not hire Plaintiff were mere pretext for discrimination and that but-for the fact that Plaintiff was over 40 years old she would have been hired. Of the 20 lease operators hired by Merit, 13 were over

the age of 40 and 8 were over the age of 50.  The oldest lease operator hired by Merit was 66 years

old.  The record is completely devoid of any evidence that Merit considered Plaintiff's age in the

hiring process.  *See Lidge-Myrtil*, 49 F.3d at 1311.  Therefore, Plaintiff has not established that her

age was the but-for reason she was not offered employment with Merit.

> **C.     ACRA**

Ark. Code Ann. § 16-123-107(a)(1) prohibits discrimination on the basis of "race, religion,

national origin, gender, or the presence of any sensory, mental, or physical disability" and further

provides that "[a]ny individual who is injured by employment discrimination by an employer in

violation of subdivision (a)(1) of this section shall have a civil action against the employer."  *Id.*

at (c)(1)(A); *see also Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 729 (8th Cir. 2019).  "In

construing the [ACRA], [Arkansas courts] may be guided by state and federal decisions

interpreting the federal Civil Rights Act."  *Harmon v. Payne*, 592 S.W.3d 619, 623 (Ark. 2020)).

Because summary judgment was granted on Plaintiff's claim for gender discrimination under Title

VII, and because her ACRA gender discrimination claim relies on identical facts and legal

principles, summary judgment will be granted on Plaintiff's discrimination claim under the ACRA.

## IV.     Conclusion

IT IS THERFORE ORDERED that Defendant's motion (Doc. 28) for summary judgment

is GRANTED.  Plaintiff's claims are dismissed with prejudice.  Judgment will be entered

separately.

IT IS SO ORDERED this 20th day of April, 2022.

/s/ P. K. Holmes, III

P.K. HOLMES, III
U.S. DISTRICT JUDGE